5th Division

April 17, 1998

1-96-2983

ROBERT W. BROWN, ) Appeal from the

 ) Circuit Court of

 Plaintiff-Appellant, ) Cook County.

)

v. ) 

) 

KEN ZEHNDER, Director, Illinois ) 

Department of Revenue, and JUDY BARR )

TOPINKA, Treasurer, State of Illinois, ) Honorable

) Alexander P. White,

Defendants-Appellees. ) Judge Presiding.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Robert W. Brown, brought this action to recover a tax penalty he paid to the Department of Revenue (Department) in his capacity as an officer of Suzy's Sweets, Inc. (Suzy's), a former Illinois corporation.  The circuit court denied his motion for summary judgment and granted defendants' motion for judgment on the pleadings.  On appeal, Brown argues that he should not be held personally liable for the tax deficiency assessed against Suzy's.

The Department issued a notice of penalty liability (Notice) to Brown on November 3, 1995, asserting that Brown was personally liable for the tax delinquency pursuant to section 3-7 of the Uniform Penalty and Interest Act (Act).  35 ILCS 735/3-7 (West 1994) (section 3-7).  The Department stated that taxes were owed for August, October, November, and December 1994.  At least one of the corporation's "Sales and Use" tax returns, on which Brown's name was listed as the reporting officer, showed that Suzy's collected those taxes.  The Department, charging that those taxes were not remitted, issued the Notice and assessed a delinquency against Brown in the amount of $7,432.77.

Brown paid the delinquency under protest, then filed a two-count complaint in the circuit court against the Department and the State Treasurer, seeking a refund of his payment and certification of a class action on behalf of other taxpayers who received a similar Notice.  Brown moved for summary judgment, arguing that as a matter of law he could not be held liable under section 3-7 for the corporation's failure to pay its sales taxes.  Defendants moved for judgment on the pleadings.  In a written order, the circuit court denied the summary judgment motion, granted defendants' motion, and dismissed the portion of the complaint requesting class action certification.  The court also ordered the Treasurer to place the protest payment in the appropriate fund.  The court subsequently stayed its order pending resolution of this appeal.

Section 2-615(e) of the Code of Civil Procedure provides that "[a]ny party may seasonably move for judgment on the pleadings."  735 ILCS 5/2-615(e) (West 1994).  A motion for judgment on the pleadings is similar to a motion for summary judgment in that both motions suggest the absence of any material factual issues as a matter of law.  
Metzger v. New Century Oil and Gas Supply Corp.
, 230 Ill. App. 3d 679, 688 (1992); citing 
Baker-Wendell, Inc. v. Edmond M. Cohon & Associates, Ltd.
, 100 Ill. App. 3d 924, 927, 427 N.E.2d 317 (1981) (judgment on pleadings); 
Mobil Oil Corp. v. Maryland Casualty Co.
, 288 Ill. App. 3d 743, 751, 681 N.E.2d 552 (1997) (summary judgment).  A judgment on the pleadings depends upon the allegations of the pleadings to establish the absence of material fact, whereas summary judgment motions may rely on pleadings, depositions, exhibits, and affidavits on file.  735 ILCS 5/2-1005 (West 1994); 
Waterfront Estates Development, Inc. v. The City of Palos Hills
, 232 Ill. App. 3d 367, 372, 597 N.E.2d 641 (1992).  

Section 3-7 of the Act provides that any corporate officer who is responsible for "filing returns and making payment of the amount of any trust tax," and "who wilfully fails to file the return or make the payment to the Department *** shall be personally liable" for the delinquency.  35 ILCS 735/3-7(a) (West 1994).  Brown does not dispute that he was responsible for filing the relevant tax returns, the corporation owed the taxes, and his failure to file the returns was wilful.  He argues, however, that as a matter of law he is not personally liable for the corporation's tax delinquency under section 3-7.  Brown contends that the Notice demanding payment of a delinquent "sales tax" could refer only to taxes collected pursuant to the Retailers' Occupation Tax Act (35 ILCS 120/1 
et
 
seq
. (West 1994)) (ROTA).  He asserts that the Notice did not authorize the Department to collect any tax from him pursuant to the Use Tax Act (35 ILCS 105/1 
et
 
seq
. (West 1994)) (UTA), because UTA applies to use taxes rather than sales taxes.  In support of this assertion, Brown points to the corporation's tax return, the top of which is labelled by the Department as "Sales and Use."  He argues that if UTA were meant to apply to sales taxes, the tax return would not differentiate between sales and use taxes.  Brown further argues that ROTA taxes are not "trust taxes" as defined by section 3-7(f) and, because section 3-7(a) applies only to trust taxes, he cannot be held personally liable under that provision. 

When construing a statute, courts must "ascertain and give effect to the true intent and meaning of the legislature."  
Hernon v. E.W. Corrigan Construction Co.
, 149 Ill. 2d 190, 194, 595 N.E.2d 561 (1992).  In determining legislative intent, courts first examine the plain language of the statute; unambiguous terms, when not specifically defined, must be given their plain and ordinary meaning.  
Hernon
, 149 Ill. 2d at 194-95.  When interpreting its scope, "the entire statute must be considered."  
City of Decatur v. American Federation of State, County, and Municipal Employees, Local 268
, 122 Ill. 2d 353, 364, 522 N.E.2d 1219 (1988).  Where possible, statutes should be construed so that no term is rendered superfluous or meaningless.  
Niven v. Siqueira
, 109 Ill. 2d 357, 365, 487 N.E.2d 937 (1985).

The taxation scheme popularly known as the "sales tax" is comprised of two complementary statutes, ROTA and UTA.  
Hagerty v. General Motors Corp.
, 59 Ill. 2d 52, 54-55, 319 N.E.2d 5 (1974); 
Department of Revenue v. Steinkopf
, 160 Ill. App. 3d 1008, 1013, 513 N.E.2d 1016 (1987) (
Steinkopf
).  See also 
In re Groetken
, 843 F. 2d 1007, 1010 (7th Cir. 1988) (
Groetken
).  ROTA imposes an occupational tax "upon persons engaged in the business of selling at retail tangible personal property."  35 ILCS 120/2 (West 1994).  UTA imposes a tax "upon the privilege of using in this state tangible personal property purchased at retail from a retailer."  35 ILCS 105/3 (West 1994).  If personal property is not taxable under ROTA, then it may not be taxed under UTA.  35 ILCS 105/3-65  (West 1994).  Both statutes impose a tax of 6.25 percent:  ROTA taxes the gross receipts from sales from personal property, whereas UTA taxes the selling price of the property or its fair market value.  35 ILCS 105/3-10, 120/2-10 (West 1994).  

UTA requires retailers to state separately the use tax and add it to the selling price at the time of sale.  35 ILCS 105/3a (West 1994).  The retailer must remit all taxes it collects under UTA to the Department.  35 ILCS 105/3-45 (West 1994).  Because UTA was enacted in part to prevent retailers from evading ROTA (
Groetken
, 843 F. 2d at 1010-11, citing 
Klein Town Builders, Inc. v. Department of Revenue
, 36 Ill. 2d 301, 222 N.E.2d 482 (1966), and 
Turner v. Wright
, 11 Ill. 2d 161, 142 N.E.2d 84 (1957)), if the retailer pays the ROTA tax, it does not have to pay the UTA tax.  35 ILCS 105/8, 9 (West 1994); 
Hagerty
, 59 Ill. 2d at 55.  As a result, when a single purchase and sale occurs, two taxes are assessed, but "only one of the two payments is remitted to the State, and the single payment satisfies both taxes."  
Steinkopf
, 160 Ill. App. 3d at 1014; 
Groetken
, 843 F. 2d at 1011.  In fact, the Department of Revenue determined that a retailer may "reimburse himself for his [ROTA] liability by collecting the Use Tax from his customers."  86 Ill. Admin. Code. sec. 130.101(d) (1996).  

As the foregoing analysis of ROTA and UTA demonstrates, the term "sales tax" commonly refers to taxes collected under either statute.  Both ROTA and UTA explicitly use the terms "sales" and "selling."  For instance, ROTA imposes a tax "upon persons engaged in the business of selling."  (35 ILCS 120/2 (West 1994)), whereas UTA states that its tax shall be a percentage of "the selling price," and the "sales tax" must be stated separately from that price when collected.  35 ILCS 105/3-10, 3a (West 1994).  The Notice's statement of a sales tax delinquency therefore refers to both statutes.  

Additionally, on at least one of the tax returns submitted on behalf of Suzy's, Brown included a deduction for taxes "collected" from the corporation's receipts, which would consist of taxes collected pursuant to UTA.  As the Notice indicates, the Department used the amount deducted on the tax return as the basis for determining the amount of the delinquency.  The October 1994 tax return, for instance, stated that Brown deducted $1,264 for taxes collected pursuant to UTA; the Notice contains a statement of delinquency in the amount of $1,264 for October 1994.  The Notice clarified the nature and amount of taxes owed, and Brown could be personally liable for the nonpayment of those taxes, whether they are considered taxes paid pursuant to UTA or ROTA.

Even if the term "sales tax," as used in the Notice, only referred to ROTA, the plain language of the Uniform Penalty and Interest Act suggests that the entire Act, including section 3-7, applies to taxes collected under ROTA.  Section 3-1A of the Act states that:

"Unless otherwise specified in a tax Act, this Act applies to all taxes administered by the Department of Revenue ***."  35 ILCS 735/3-1A (West 1994).

The supreme court recently discussed the construction of the precursor to section 3-7, section 13 1/2 of ROTA (Ill. Rev. Stat. 1991, ch. 120, par. 452 1/2, recodified at 35 ILCS 120/13.5 (repealed effective January 1, 1994)).  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 659 N.E.2d 961 (1995).  In 
Branson
, the court explained that a corporate officer who is legally obligated to file the corporation's tax returns and pay the taxes could be personally liable under ROTA for wilful failure to comply with the Act.  
Branson
, 168 Ill. 2d at 257.  

Brown claims that 
Branson
 is not relevant to an interpretation of section 3-7, because that provision contains significant changes from its predecessor and no longer applies exclusively to ROTA taxes.  Two specific changes were made when section 3-7 was enacted.  First, the provision was taken out of ROTA and made part of the Uniform Penalty and Interest Act.  This change does not preclude the application of section 3-7 to ROTA taxes.  When construing statutes relating to the collection of taxes, courts must give them a common sense meaning in order to avoid making collection difficult or impossible.  
Branson
, 168 Ill. 2d at 258.  Here, section 3-1A of the Act provides that the Act is intended to apply to all taxing statutes unless otherwise stated.  The removal of section 3-7 from ROTA allows the Department to enforce the penalty provision for the violation of multiple taxing statutes in addition to ROTA, and was not intended to prevent the Department from imposing a penalty for a ROTA violation.

The second change made to section 3-7 was the type of tax to which the penalty provision was applicable.  Previously, the statute provided that a responsible corporate officer could be personally liable for the failure to pay the corporation's ROTA taxes.  35 ILCS 120/13.5 (West 1992).  When enacting section 3-7, the legislature inserted the phrase "trust tax," which is defined in section 3-7(f) as "any tax for which an amount is collected or withheld by a taxpayer from another person ***."  35 ILCS 735/3-7 (West 1994).

Although ROTA taxes constitute a legal obligation of the retailer, the taxes themselves are collected or withheld from the purchaser and held by the retailer for payment to the Department.  The supreme court, considering the operation of ROTA, has repeatedly observed this custom, noting that "the corporation collects the [ROTA] tax from its customers at the time of its sale.  The retailer corporation having collected the money, the customary procedure would be to account for and make payment to the Department of Revenue."  
Branson
, 168 Ill. 2d at 258, quoting 
Department of Revenue v. Joseph Bublick & Sons, Inc.
, 68 Ill. 2d 568, 575-76, 369 N.E.2d 1279 (1977) (
Bublick
).  This fact is especially true in light of ROTA's relationship with UTA, which Brown does not dispute is subject to section 3-7, and which requires a retailer to withhold the exact same amount of tax from the consumer that the retailer is required to pay the Department under ROTA.  

In 
Bublick
, the court explained the policy for holding responsible corporate officers liable for failure to pay ROTA taxes: 

"The corporate officers could employ the funds collected for the State to pay corporate obligations as well as salaries and bonuses to employees, and thus make recovery of the funds from a defunct corporation an impossibility.  There, of course, has to be some responsibility for the stewardship of the funds collected from the public for the State."  
Bublick
, 68 Ill. 2d at 575-76.

The plain language of ROTA and the Uniform Penalty and Interest Act, the common application and payment of ROTA taxes, and the policy behind applying section 3-7 to ROTA, undermine Brown's argument that a corporate officer may not be personally liable under section 3-7 for the wilful failure to pay a corporation's ROTA taxes.  In addition, 
Groetken
, the case cited by Brown in support of his argument that ROTA and UTA should be treated differently for purposes of section 3-7, is distinguishable.  The 
Groetken
 decision involved the interpretation of ROTA and UTA in the context of the Bankruptcy Code.  The 
Groetken
 court, following 
Steinkopf
, held that ROTA could not be considered a "trust fund tax" within the meaning of the Code.  
Groetken
, 843 F. 2d at 1013.  
Groetken
 and 
Steinkopf
 were decided before the enactment of section 3-7 and the remaining provisions of the Uniform Penalty and Interest Act, which defined the term "trust tax" and the scope of the Act's application.  The fact that a ROTA tax was not a "trust fund tax" under the Code is irrelevant to the question of whether it is a "trust tax" as defined by the language of the Act.

For the foregoing reasons, the circuit court's order granting the Department's motion for judgment on the pleadings, and denying Brown's summary judgment motion, is affirmed.

Affirmed.  

HOFFMAN, P.J., and THEIS, J., concur.